# Sloss-S. S. & I. Co. v. Mitchell.

## Damage from Overflow of Water.

(Decided April 17, 1913. 61. South. 934.)

1. *Action; Separate Cause; Damage for Overflow.*—Where the channel of a stream is permanently obstructed by a dam or fill so as to cause a constant overflow upon another's land, the damages are regarded as original, and must be recovered in one action; but where a culvert is provided, sufficient to carry off water in usual volume, thus causing only occasional recurrent overflows, the damage is continual, and each overflow constitutes a separate and distinct cause of action.

2. *Water and Water Courses; Obstructions; Measure of Damages.*—Where an obstruction in a stream causes a constant overflow of another's land, the measure of damages is the reasonable value of the land permanently overflowed, and the diminished value of the remainder of the tract not overflowed.

3. *Same.*—Where due to the obstruction of a stream the overflow of another's land is not permanent, but causes irreparable and permanent injury to the freehold, the measure of damages is the difference between the value of the premises with and without such injury at the time thereof.

4. *Same.*—Where injury to land by overflow is not permanent, and the premises may be restored to their original condition, the measure of damages is the reasonable expenses of restoring the premises plus the difference in their reasonable rental value with and without the overflow during the period thereof.

5. *Same.*—Where there was evidence of irreparable injury to land caused by an overflow the duty devolved upon plaintiff to furnish such evidence as to the nature and extent of the damage and the reasonable cost of its complete reparation as would enable the jury to ascertain or estimate the money value of the injury.

6. *Same.*—The damage for the difference between the rental value of the property with and without the damage resulting from the overflow is not to be determined by the difference between the amount of rents stipulated for or collected before and after the overflow and damage, since such amounts would be affected by too many unrelated contingencies.

[Sloss-S. S. & I. Co. v. Mitchell.]

7. *Same.*—Where lands of another are overflowed by reason of an obstruction in a stream and rent paying tenants are thereby driven out and do not return, and after the houses are repaired and made fit for occupancy, the owner is unable after reasonable efforts to re-rent them, the loss of rents during such period of vacancy is not a proper subject of recovery; the recovery for diminished rental value meeting the requirements of substantial justice, especially as such recovery is allowed as an injury to the land, whether there is any subsequent diminution in the actual rents or not.

8. *Same; Evidence.*—In an action for overflowing plaintiff's property evidence of the reasonable cost of repairs to the building was not admissible unless it was shown that such repairs were confined to the injuries caused by the overflow, and such costs restricted to their reparation only.

9. *Same.*—In an action for overflowing plaintiff's premises it was competent on the question of diminution in rental value to introduce evidence as to the amount of rent customarily paid by the tenants of the several houses on the land before and after the damage.

10. *Same.*—Evidence that some of the houses on the premises overflowed were vacant after the overflow, was not competent, especially in view of other evidence that the houses had not been continually occupied, and were vacated, more or less, and also that a number of the houses were not touched by the overflow and may have been vacant from other causes.

11. *Same.*—On the question of computing damages, it was competent to show by a witness acquainted with the stream and its flowage for thirty years, that he warned defendant that the pipes placed by it were not sufficient to carry off the water.

12. *Same.*—Where the allegation in the complaint was that plaintiff was the owner and in possession of the premises overflowed, and the evidence showed that he was in possession under a claim of ownership, there was no variance nor failure of proof, since possession under a claim of ownership imports ownership as against a tort feasor.

13. *Damages; Duty to Reduce.*—It was the duty of plaintiff, owner of the premises overflowed, to reduce as far as he reasonably might the diminished rental value of the premises by restoring them to their full or former rental value if it could be done with reasonable effort, expenditure and expedition, and if he had the means and ability to do so, and neglected this duty for an unnecessary period, his recovery would abate proportionately.

14. *Landlord and Tenant; Injury to Leased Property; Right of Recovery.*—Where premises are damaged by overflow while under a lease, the diminution in rental value during the term of the lease is an injury to the tenant, recoverable by him and not by the landlord.

15. *Evidence; Facts or Conclusions.*—Where the action is for injury to property, witnesses should not generally be allowed to state that the property was or is damaged, but should state the conditions under the different circumstances and leave the° conclusion to the jury.

19—181

16. *Appeal and Error; Harmless Error; Evidence.*—Where the testimony that the property was damaged was followed by a statement of the witness of the actual condition, his statment that the property was damaged was harmless.

17. *Charge of Court; Necessity of Requesting; Misapplying Evidence.* Where evidence is competent only on a part of the issues, and its misapplication by the jury is feared, an instruction limiting it to such issues should be requested.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. O. LANE.

Action by G. B. Mitchell against the Sloss-Sheffield Steel & Iron Company for damages for causing the waters of a branch to overflow and damage his land and buildings during the flood season. Judgment for plaintiff in the sum of $400, from which defendant appeals. Reversed and remanded.

See, also, 167 Ala. 226, 52 South. 69.

The complaint is in four counts, the amended first and second counts of which declare upon an overflow that occurred on September 28, 1906, and are identical in form, except that the second count claims punitive damages. The third and fourth counts declare upon overflows which occurred, respectively, January 31, 1907, and May 14, 1907, and the allegations are substantially the same as those of the first and second counts, with some additional specifications of damages. These allegations, as set out in the first count, will be found in full in a former report of this case in 167 Ala. 226, 52 South. 69. The trial court gave the general charge for defendant as to count 2, but refused on defendant's request in writing to give it as to counts 1, 3, and 4. The following charge was also refused to defendant: "(6) If you believe the evidence in this case, the plaintiff is not entitled to recover for any depreciation in the rental value of the property mentioned in the complaint." The various rulings on the evidence are sufficiently shown in the opinion.

[Sloss-S. S. & I. Co. v. Mitchell.]

TILLMAN, BRADLEY & MORROW, and CHARLES E. RICE, for appellant. The 1st count of the complaint as last amended is subject to the demurrer interposed, as is the 3rd and 4th count. The defendant was entitled to the affirmative charge under the 3rd count also, as this cause of action is separate and distinct from the cause set out in the original complaint.—*A. G. S. v. Shahan,* 116 Ala. 305; *Freeman v. C. of Ga.,* 154 Ala. 620; *Ala. C. C. & I. v. Heald,* 154 Ala. 586; *Nelson v. 1st Nat. Bank,* 139 Ala. 587. The defendant was entitled to have the court instruct the jury as requested in charge 12.—*Sloss-S. S. & I. Co. v. Mitchell,* 49 South. 853. On the same authority charge 14 should have been given. Charge 21 should have been given on the same authority. As to what Mr. Mitchell had been getting for his houses up to the time of the January flood was not the proper inquiry.—*Sloss S. S. & I. Co. v. Mitchell,* 52 South. 72. Counsel discuss other assignments of error but without further citation of authority.

SAMUEL WILL JOHN, for appellee. For former opinion see 161 Ala. 238. Counts 1, 2, 3 and 7 were drawn under that opinion. Plaintiff is entitled to recover for any damages to the land up to the time of the verdict.— Sec. 3839, Code 1907. Counsel discuss the charges refused in the light of the former opinion in this case, and insist that they were refused without error.

SOMERVILLE, J.—The questions of primary importance presented on this appeal relate to the measure of plaintiff's damages, including the elements of damage and the proper mode of their proof.

Plaintiff's evidence tended to show that the waters of the branch overflowed upon his premises on the three occasions specified in the complaint; that the floors of

some of the tenant houses were covered by the flood waters for a period of several days; that in consequence some of the floors, walls, foundations, and chimneys were injured; that in September, 1906, the receding flood left mud and trash in some of the houses, and dead animals and fowls on the premises generally, which produced offensive odors; that many of the tenants moved out during this flood, some of them not returning, and that some of the houses, from 4 to 12 in number, remained vacant for a year or more, all, about 25 in number, having been previously occupied at a rental of $5 a month each; and that the overflows in 1907 caused water to stand under about half of the houses for a day or two and got into some of them.

Where the channel of a stream is so obstructed by a permanent dam or fill as to cause a constant overflow upon another's lands, the damages are regarded as original and must be recovered in one action. But where the dam or fill is provided with a culvert sufficient to carry off the water of the stream in its usual volume, and causes only occasionally recurrent overflows, the damage is continuing, and each overflow constitutes a separate and distinct cause of action.—*Harvey v. Mason City, etc., R. Co.,* 129 Iowa, 465, 105 N. W. 958, 3 L. R. A. (N. S.) 973, 113 Am. St. Rep. 483, collecting the authorities. In this connection it is to be observed that the distinction between these two classes of cases lies not merely in the permanence of some special injury to the freehold, but rather in the permanence of the original cause and the completeness of its injurious results once and for all.—*St. Louis, etc., R. R. Co. v. Biggs,* 52 Ark. 240, 12 S. W. 331, 6 L. R. A. 804, 20 Am. St. Rep. 174, and notes. The distinction is clearly stated also in *Harvey v. Mason City, etc., R. R. Co., supra.*

In the former class of cases the measure of the plaintiff's damages would be the reasonable value of the land permanently overflowed and the diminished value of the remainder of the tract not overflowed, if any.—*Hall v. City of Austin*, 20 Tex. Civ. App. 59, 48 S. W. 53; *Rourke v. Central Mass. Elec. Co.*, 177 Mass. 46, 58 N. E. 470; 2 Farnham on Waters, etc., p. 1869. In the latter class of cases the rule for the measure of the damages has been variously stated, and various modes of proof have been allowed by the American courts.

Where permanent (that is, irreparable) injury is done to the freehold, it would seem that the only proper measure of damages is the difference between the value of the premises with and without such injury at the time thereof.—*Drake v. Lady Ensley, etc., Co.*, 102 Ala. 501, 14 South. 749, 24 L. R. A. 64, 48 Am. St. ep. 77; *Graves v. K. C., etc., R. R. Co.*, 69 Mo. App. 574, 579.

But where the injury is not permanent, and the premises may be restored to their original condition, a different rule prevails in this state. In a former action between the present parties, founded upon the same nuisance here complained of, injuries of the character here shown were held to be not permanent but reparable, and it was said: "So far as these injuries are concerned, the true measure of plaintiff's damages was the reasonable expense of restoring the premises and the loss of income pending their restoration with reasonable effort, expenditure, and expedition."—*Sloss-Sheffield S. & I. Co. v. Mitchell*, 161 Ala. 278, 49 South. 851. On the former appeal in this case it was said: "Of course plaintiff was not entitled to recover more than his actual damages on account of loss of rents. We think the difference between the reasonable rental value of the lots and houses with and without the overflow, during the period covered by the suit, is the correct measure

of such damages."—*Sloss-Sheffield S. & I. Co. v. Mitchell*, 167 Ala. 226, 52 South. 69.

As laid in the present complaint, the damage resulting from the several overflows was: (1) Permanent injury to the premises by rendering them less desirable for residence purposes; (2) irreparable injuries to the buildings by the action of the water, and to the grounds by the deposit of mud and dead animals thereon; (3) the actual loss of rents due to the compulsory abandonment of some of the houses by their tenants at the time they were flooded, and their failure to return, and plaintiff's inability to procure other tenants; and (4) general impairment and depreciation of rental value. The evidence adduced furnishes no support for the charge of permanent injury to the premises or to their rental value.

There is ample evidence to support a finding that the buildings were injured by the overflow of 1906, but it devolved upon plaintiff to furnish such data as would enable the jury to estimate the money value of that injury, to be measured by the reasonable cost of restoring the buildings to the condition in which they were when so injured. To this end it was proper and necessary to show the nature and extent of the damage done to them, and to show by competent estimate the reasonable cost of its complete reparation.

It was not proper, however, to allow plaintiff to testify that the reasonable cost of repairs that he made on the houses was $1,500 without showing that such repairs were confined to the injuries wrought by the overflows and the cost restricted to their reparation solely. So, also, it was erroneous to allow plaintiff to testify that "during the year following these floods there was $600 or $700 spent in repairs there, and then about the same amount the next year." The propriety

and necessity of the restrictions stated are too obvious to require discussion.

Plaintiff was entitled to prove, as the measure of his damages for the loss of income, the difference between the rental value of the property with and without the damage resulting from the overflows. This difference is not to be determined by the difference in the amount of rents stipulated for or collected before and after the damage, for there are too many unrelated contingencies that might vitally affect such amounts.—*Sloss-Sheffield S. & I. Co. v. Mitchell,* 167 Ala. 225, 235, 52 South. 69; 2 Farnham on Waters, etc., p. 1875. On this subject Mr. Farnham says: "There is no doubt that in determining rental value the loss of the net profits could be taken into consideration, and might, in some instances, furnish a very accurate index of the diminished value; but under most circumstances the diminished value is a much more easily ascertained and certain measure of damages than the loss of net profits."—Vol. 2, p. 1875. The author was here speaking of injury to or destruction of crops, and the first part of the language quoted is hardly appropriate to the loss of rents in such a case as the present.

We think, however, that evidence of the amounts of rent customarily paid by the tenants of the several houses just before and after the damage would be competent for the consideration of the jury on the question of rental value, and it would be for them to say whether and to what extent the diminution, if any, was due to the damaged condition of the premises, or to other causes.

But, as already stated, the right to recover for diminished rental value was qualified by the duty resting on plaintiff to minimize, as far as he reasonably might, his loss in that particular. And that duty in the present

case was to restore the premises to their full or former rental value, "with reasonable effort, expenditure, and expedition."—*Sloss-Sheffield S. & I. Co. v. Mitchell,* 161 Ala. 278, 283, 49 South. 851. Having the means and ability to do so, his neglect of the duty for an unreasonable (that is, unnecessary) period of time would abate his recovery proportionately. In *Graves v. K. C., etc., R. R. Co.,* 69 Mo. App. 574, 579, a case much like this, it was said: "If the destruction of the fences and houses interfered with the beneficial enjoyment of the premises, then, in addition to the value of the property destroyed, the loss of the rental value for the time it would have taken to restore the improvements should be added.—3 Sedg. Damages, §§ 938, 1015." To the same effect are *City of Keithsburg v. Simpson,* 70 Ill. App. 467, and *Helbling v. Allegheny Cemetery Co.,* 201 Pa. 171, 50 Atl. 970.

Upon this issue, or upon any other, it was not proper to allow plaintiff to testify that eight or ten of the houses were vacant the second year after the overflows, and six or eight the third year; and this impropriety is emphasized in view of plaintiff's further testimony that the houses had not been continually occupied and "were vacated more or less." Moreover, a number of the houses were not touched by the overflows, and some of these may have been afterwards vacant from other causes. Clearly such evidence could form no basis either for the estimation of rental value or of the loss of rents due to the expulsion of tenants by the flooding of their houses.

This leads us to a consideration of the question whether plaintiff may have been entitled to recover specially for the actual loss of rents, independently of his general recovery for diminished rental value. That is to say, if the flooded houses were occupied by rent-

paying tenants who were driven out by the flood and did not return, and, after the houses were restored and made fit for occupancy again, plaintiff was unable by reasonable effort to retenant them, is the loss of rents during such period of vacancy capable of satisfactory proof and a proper subject of recovery? Something might be said in favor of the justice of its allowance; nevertheless, we think it unadvisable for courts to venture into a field so full of speculation and uncertainty, and that the rule already laid down by this and other courts, allowing full recovery for diminished rental value, will meet the requirements of substantial justice. For it is to be noted that that rule allows that measure of recovery *as an injury to the land,* whether there is any subsequent diminution in the *actual* rents or not.

In this connection it is to be observed that, if any part of the damaged premises is under lease at the time of the damage, the diminution in rental value during the term of the lease is an injury to the tenant and not to the landlord, and for it the tenant may recover.—2 Farnham on Waters, etc., §§ 591, 5591a. The injury to the landlord in this respect would be only from the termination of pending leases. It follows, of course, that testimony as to some of the tenants moving out and their houses remaining unoccupied for varying periods, as to the demand for the houses before and after the overflows, as to the loss of rents after the overflows, and such like matters, should not have been submitted to the jury.

Witnesses should not in general be allowed to state that property was or is damaged, but should state its condition and leave the conclusion to the jury.—*Gosdin v. Williams,* 151 Ala. 592, 595, 44 South. 611; *Central of Georgia R. Co. v. Keyton,* 148 Ala. 675, 41 South. 918; *Atlanta & B., etc., R. R. Co. v. Brown,* 158 Ala.

607, 48 South. 73. In the present case, however, plaintiff's statement that the lumber in the houses was damaged was followed by a statement of the actual conditions resulting from the overflow, and hence the error was harmless.

On the issue of wanton injury under the second count, it was competent for the witness Howell to testify that he had warned defendant's servant, who placed the pipes under the fill in question, that they were insufficient to carry off the water, and that the water required the entire channel. The witness had been acquainted with the branch and its flowage for 30 years, and presumably was giving the result of his personal observations. Of course the witness' warning was not competent or material evidence under the issues of the other counts. In such a case the defendant should request an instruction limiting the testimony to the issue to which it is appropriate, if its misapplication by the jury is feared.

The complaint alleges that "plaintiff was the owner and in possession of the overflowed premises." The evidence showed that he was in possession of the premises under claim of ownership. Such possession imports ownership, and a tort-feasor is in no position to deny the rights of a plaintiff in peaceable possession.— *Hendrick v. Johnson,* 5 Port. 208, 212; *So. Ry. Co. v. Leard,* 146 Ala. 349, 363, 39 South. 449; 2 Farnham on Waters, etc., p. 1879, § 591. There was here neither a variance nor a failure of necessary proof in this regard and defendant's requests for affirmative charges on that theory were properly refused.

For the errors pointed out, the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.